With the lawyers who are going to, or seeking to participate, please step up and identify yourselves for the record. Good morning. Scott Golinkin, on behalf of Mr. Cushing, is the supervised administrator of the estate of Claudia Zabunka, deceased. Okay. Good morning. Paulus Dezito for Greyhound. All right. Good morning to you all. I'm going to ask, before we go any further, to address Mr. Novoselsky on this. So if you gentlemen would have a seat. The first issue I have is, who is it that you are representing today? M.B. Financial, Your Honor. M.B. Financial as what? As the court-appointed guardian of the estate of Christina Zabunka, and as the court-appointed special administrator under the Will case. Would you please close that door? Of the Will case? No, he did it under the authority of Will. But in both instances, you purport to be representing the interests of the guardian and special administrator of the minor? No, one would be the minor, the other would be the decedent's estate. So both the minor and the decedent's estate? Yes, sir. You're representing both the minor and the decedent's estate? No, I was appointed, even though I've tried to get out several times, I've been refused. I'd love to get out. The court appointed myself, a firm of Goldberg Weiss in Cairo, as the attorneys for the estate of Christina Zabunka, a minor, and also appointed us as the attorney for the decedent's estate. I think the order was attached yesterday to the pleading you got as Exhibit F, showing that the court had- I thought Mr. Cushing represents the decedent's estate. Mr. Cushing represents the decedent's estate. In the probate, he's never been removed. Judge Localo had originally entered an order removing him and then rescinded the order. This would be, in my understanding, an additional amendment under the Will case. If you remember, if you go to Will- Let me ask you. I want to ask you. I thought that one of the first things that Judge Localo had decided was that there was a conflict between the estate and the minor. No, between Klein and the minor. Okay, so Klein is the deceased husband. Yes, correct. But the estate of the deceased and the estate of the minor have differing concerns on some issues, do they not? I don't know that they do or don't. Well, then- Wasn't there determination about how much the minor receives as the beneficiary of the estate, specifically 95% versus Klein, 5%? That was done, yes. That was done by Judge Haddad without any input from either the bank or myself. Well, in any event, doesn't that finding suggest that there's differing interests right off the bat? No more than any other decedent's case where you have a beneficiary. In fact, the Will case was the same way. There was an allocation to the minors and to the- Today, are you suggesting that you are only here in an effort to try to address the court as far as the attorney for MB as the special administrator of the estate of the minor? No, I'm here on behalf of MB in both capacities because we were directed to do so by Judge Haddad. I was actually not planning on offering any argument. I was going to simply answer questions that the court had. Well, if you're not going to argue- I was going to respond to questions. If you're not going to argue- I'll have one question before we start then. Sure. I'm sorry, yes. Were you sanctioned in federal court? Was the sanctioned order entered against you involving the minor? No.  The minor- The removal of what? Mr. Zedack is ostensibly on behalf of, and it's difficult to tell, various parties, filed a motion to intervene before Judge Scherz. That was removed. The suggestion that there was a counter-loss, there were counterclaims that the court did not allow. Before you go into the details of this, I guess the simple question is, was there a sanction for $10,155 granted finding you personally liable to the minor, Christina Zavonka? Oh, yes. And that's on appeal- Did you know what I just asked you? Yeah. Well, but you said no. No, I said was there a- I apologize, Mary. There was a sanction entered which is on appeal. The money has been paid into the registry. But doesn't that create a conflict between you and the estate of the minor? First of all, I never represented the minor personally. The money- the sanction was entered on behalf of the minor personally. So you're drawing a distinction between the interest of the minor personally and the estate that's set up to protect the interest of the minor personally? Yes, and by the way, I asked to get out.  You know, I'm kind of here in handcuffs because I have made about five different requests to get out. I've been sued repeatedly by what ostensibly either the minor or Mr. Zafis or Mr. Klein and everybody else. I've had numerous cases filed against me. And I go back before the court and say, can I please get out? You know, it's costing me, A, a lot of money, B, a lot of time. I'm told no. Okay. All right. As long as you're not going to participate. Well, I'd like to answer questions if there's questions addressed to MB, because MB is entitled to have a lawyer. Well, maybe they should have a different lawyer. MB didn't file a brief. Judge, I asked. MB didn't file a brief. We joined in the brief. We joined in the brief on the 29th. All right. So you joined. And Judge, from your lips to God's ears, I have been trying to get out of a case that I haven't- I don't want to be in. I've had the judges tell me- I don't want to give up any more time if you're not participating. That's fine. Thank you very much, Mr. Novoselsky. Why don't you have a seat in the back? That's fine. Mr. Golinkin, before we go any further, and I think the first and most important issue for us to decide at this point or hear remarks on this point is the jurisdiction of this court. Would you address yourself to that, please? I'd be delighted to. Thank you, Mr. Golinkin. I know that that issue has been raised, but I don't think that there really is a serious question about the jurisdiction here. Well, let me point you- My issue is jurisdiction. I want to know. I don't- I think it is a question. It's been raised. Certainly. And apparently it was denied by one judge, not three. Whenever our jurisdiction is an issue, we have an obligation to consider it. And you don't write a single case- For the record, it's none of us. You don't write a single case to support jurisdiction. You've cited a section of the statute, which is a limited jurisdictional provision that allows for the appellate court to hear cases in a very limited way. And it's 304B. And so I'd like you to explain to us why we do have jurisdiction. Gladly. And I did not mean to imply that it wasn't a legitimate question. But here's my answer to that. The statute does permit, and I will tell the court I'm not aware of any cases that are on point on this issue. Okay. So if I could- There are cases that have interpreted that section. There are, and I'm not aware of any that have interpreted it with respect to this particular issue, because as I see the issue here, Mr. Cushing had been appointed the representative, and the question was, which would make this immediately appealable, was he in fact removed from that position as a party? And there are cases that might shed some light on whether or not Mr. Cushing was in fact removed. So if that's all you're going to say, that's fine. But the rule says that a judgment or order entered in the administration of an estate guardianship or similar proceeding. Perhaps you can stretch that and say that an order entered in the other division had some sort of bearing on the estate, and that's fine. But there's more to the rule, which finally determines the rights or status of a party. So you're just going to say that today Mr. Cushing was effectively removed, and you don't want to cite any cases? Well, you haven't cited any still. And I apologize, Your Honor, if I've neglected to cite something I should have cited. What I will say to the court … How about the original motion to dismiss? What did that suggest, and what was your response? The original motion to dismiss, I believe, said that Mr. Cushing was not removed. There was simply a special administrator appointed, and that Mr. Cushing retained all of his authority in the probate division. And the response to that, and I think it's the correct response, I respectfully submit, is that I think you have to look at the substance of what occurred. That's true. That's the case law. And not merely the designation. And the substance here was that Mr. Cushing was effectively, for all practical purposes, removed as a party in the wrongful death case. Now, I know that a motion to reconsider was filed when the special administrator was appointed. And was the bulk of that devoted to the notion that Mr. Cushing had effectively been removed, and that by appointing M.B. that his power as the administrator, am I using the right term? Yes. Those powers were effectively negated. The written motion argued that the appointment of M.B. Bank as special administrator was violated the statute because it didn't comply with the requirements of the statute. In the oral argument in front of Judge Haddett, we did make the point. Judge Haddett said, well, do you want Mr. Cushing to be appointed special administrator? And the answer was, no, he is the administrator. He's the supervised administrator. So if you appoint somebody else and he's not that person anymore, if he doesn't get to fulfill the role that he normally would fulfill, then yes, he's been effectively replaced. Let me ask you this. When Judge Lockello first started dismissing everyone, the lawyers, Mr. Cushing, although he vacated that order, he never dismissed the guardian of the minor in the probated case, did he? He did not dismiss. What is the woman's name? Ellen Douglas. And she's still fully involved. Isn't she in this? Well, she was involved to the extent the trial court would allow her to participate in certain things and would hear her, but it was very clear that the trial court was not paying attention to her particular recommendations or to her status or having any standing in the law division court. The other problem with that is that somehow being an effective substitute is that Doesn't the special administrator at the corporation have a completely different role than the attorney, Mr. Cushing, as the administrator in the probate? If the special administrator is supposed to come in. The special administrator can't hire an attorney, can't involve himself in the legal proceedings, can't question any of the attorney's fees or anything like that, can it? Well, I think the special administrator can. Certainly under the wrongful death act you can have several special administrators. The corporate one is excused from doing all those things if there's somebody else doing it. But if there's nobody else doing it, the corporate special administrator is not excused from those duties. Was the corporate special administrator representing the estate of Claudia or was it appointed to represent the interests of the minor? It was solely appointed. Envy Bank served two roles. Envy Bank served one role as guardian of the estate of Christina Zavonka, the minor. Is there anything wrong with that? Is your position that there was anything wrong with that? We are not contesting that. It also served the role, it was appointed separately at a later date by the trial court, to be the special administrator of the estate of Claudia Zavonka, deceased. So in that role, it was separate, divisible from its role as the guardian for the minor. And what we're contesting is its role in that position. But if that doesn't affect the rights, powers, and authority and duty of Cushing in his probate appointment, then there is, you would agree, no jurisdiction here. If it didn't do that, I would agree with that, but I submit that's, in fact, exactly what happened. And the reason is this. Because he wasn't removed. He was not formally removed. He wasn't reinstated, of course. Yeah, well, we noticed that little glitch, yes. Exactly. He remained in name, and there was constant reference throughout the proceedings, Mr. Cushing, when we're done here, you'll take this back to probate, and then you start up again. Right. So also involved in this issue, as we discuss whether there is jurisdiction, is the so what. He is given the opportunity to weigh in on the propriety of the settlement and raise any objections. He's invited to participate with comments and, for whatever reason or combination of reasons, declines to do so. And if the issue really is whether he was prevented from doing his job and protecting the interests of the estate of the deceased, why does he not take the opportunity to raise objections, raise questions, do anything other than stand basically mute when invited specifically by the law division judge to comment on the contemplated disposition of the estate's cause of action against the defendants? I think the answer to that, Justice Epstein, is that there is a huge difference between commenting and participating as a party and commenting as a bystander, and that was his role at that point. Well, why doesn't he even say, I would love to participate and raise questions, but frankly I've been shut out of things and so I can't even formulate the questions because there is information that I need to know that I have not been privy to. He didn't even make a record of that. There is a statement in the record. There is him speaking to Judge Haddad, or my speaking on his behalf to Judge Haddad, saying, well, you know, Judge, he was never allowed to participate in any of these Rule 63 conferences. Didn't this happen long before Judge Haddad took over the case? Isn't it Judge Locamo who started this whole thing rolling? He said that he was going to remove the lawyers, and he did remove the lawyers. He appointed Attorney Govins to represent the minor. He was appointed a guardian ad litem. That's correct. And he also removed Mr. Cushing for a short period of time and then vacated that order. That's correct. Now, at that point, was Mr. Cushing effectively removed? At that point I would say, well, once he was back in, I would say, frankly, from the record, it's a little difficult to tell because from that point until when Judge Haddad came on board, which was a matter of a couple of months later, not a lot took place. There was, I believe, one Rule 63 conference. Let me ask you this. When Judge Locamo reinstated Mr. Cushing, now Mr. Cushing had filed the initial lawsuit for another, was there a previous administrator for a short period of time whose name escapes me? Marshall. Yes, there was. Did Marshall and Mr. Cushing each file separate suits, or did Marshall and then Mr. Cushing take over and hire lawyers to file the lawsuit? The lawsuit was originally filed by Mr. Marshall as an administrator. There was a change of administrator. That's right. Mr. Klein has to have Mr. Marshall removed and Mr. Cushing. That's correct. And then Mr. Cushing became supervised. One of all the lawyers were thrown out. Why didn't Mr. Cushing get his own lawyers? Well, actually, at the time that it happened, his lawyers were thrown out. He appeared in front of Judge Locamo. Excuse me. Those words are, you know, when they were discharged by the courts, and the courts used a particular provision to do what it did, I believe. To discharge the lawyers? Yes. Actually, to discharge the lawyers, what it did was it said it was going to appoint a guardian ad litem to the government. It did not remove Mr. Cushing, but the tenor of everything was that the representative of the estate of the ward shall appear and represent the ward in all legal proceedings, unless another person is appointed for that purpose. And this does not impair the power of any court. Probate, law, this does not impair the power of any court to appoint a representative to defend the interest of the ward in that court, or to appoint or allow any person as the next friend of the ward to commence, prosecute, or defend any proceedings. That's correct. The distinction here is that a special administrator, MB, and I'm not sure if this addresses your question. If it doesn't, please tell me and I will. That MB was not appointed as special administrator for the ward. It was appointed as special administrator for the estate of the deceased. So I would submit that that statutory provision doesn't govern. Oh, then it's the appointment of the person in probate to represent the estate of the ward. I'm not sure I understand how Mr. Cushing is impacted by what's going on in the law divisions trying to settle the case in the interest of the ward, as opposed to Mr. Kline, the decedent's husband. Well, and you raise, I think, a legitimate issue and a serious problem with this, because the estate does encompass both interests. Now, if one were to say- You know what? I want to go back to my question. Sure. Once Judge Locallo reinstated Mr. Cushing, but the lawyers had been discharged, and he appointed Mr. Gubbins as the guardian ad litem. That's correct. From that time on, why didn't Mr. Cushing go out and get other lawyers to continue the prosecution of the law division case? And he did try to do that, and eventually he found me. And about the time I got involved was shortly before the order was entered on MB as special administrator, and then this process undertook. And at that point it became clear that the Rule 63 started. But you became involved after Judge Locallo had appointed Gubbins, and then he had also appointed, wasn't it Mr. Tyrone and Mr. Novoselic? To represent the interests of the minor, not to represent the estate, per se, which would include Mr. Klein's interests. And regardless of his conduct or lack of conduct in this matter, he still remains an heir and still is entitled to his legal representation. And Mr. Gubbins was never appointed to represent those interests. So when was he removed, Mr. Cushing? I would say he was effectively removed when MB, as close as we can pin a date on it, when MB Bank was appointed as special administrator, because that was the point when there was an entity appointed by the judge to take care of or represent the estate in the litigation. So I'm looking at this request for relief in your reply brief. And we have basically a little over $2 million going 95% to the estate of the minor. 25%, according to the order, goes to the lawyers. Another 28%, I think, goes for costs and expenses. 22%. All right, so you're talking basically 53% at this point, and God knows what with the 64 motions that have been filed in these matters in this court, and that's the exact number as of today unless somebody's filed something in the last 20 minutes, which is distinctly possible. We're already having basically half the money, according to the lower court's orders, not going to the beneficiaries. You, in your request for relief, ask that we vacate the order appointing MB Bank as special administrator of the estate of Claudia Zabunka and remand the case to the trial court to conduct the case from the point of removal forward, which vacates the settlement, a settlement which your client, when given the opportunity to object to or ask questions about, stood mute, and I'm just thinking about even if your theory is right as to the effective removal and your jurisdiction, how does this possibly benefit the interests of the beneficiary or the estate of Claudia Zabunka? I think there are a couple of answers to that, at least somewhat indirectly. The first one is that the argument seems to be, in essence, the ends justify the means. The question is, why are we here? Why does it matter? I mean, the elephant in the room, obviously, is legal fees, right? Well, or the amount of the settlement itself. But the amount of the settlement seems to have been agreeable to everyone. That was not objected to. There was never a word uttered by any attorney, guardian, or other appointed representative saying that we believe that the $2 million settlement is unreasonable. I don't think we can get to that issue. Well, and I would point out that that is the subject of a separate set of consolidated accounts. Oh, I'm well aware of that. I knew the court was quite aware of that. Well, what did this special administrator do? It hindered, tampered, changed the status of, or what did this special administrator ever do? What conduct, what actions, what can you speak to that shows us that Mr. Cushing was effectively removed? It wasn't what the special administrator did. It was what the trial court did. Okay. Now, you suggest that the order is void. And it's one of the reasons why you say that if a void order is entered, then the settlement is void. However, there's a big difference between something that is void and something that is merely void. Now, a question has clearly come up here as to whether or not when Judge Locallo, or rather Judge Cadet, appointed a special administrator, whether that is a void order at all. Didn't the court have personal and subject matter jurisdiction? I would say that it did not have. Did it have subject matter jurisdiction and personal jurisdiction? I think the answer to that is, if you look at the case law, and I think the Pruitt case is on point on this, is when you've got one, you can't put in another one. And putting in another one that doesn't follow the procedure makes it void. Okay. Well, let's go back to who it did have jurisdiction over. Was there subject matter jurisdiction and personal jurisdiction over the two estates that we're dealing with, the estate of the deceased and the estate of the minor? The answer to that, I think, is yes, it did have. Did it have subject matter jurisdiction because the lawsuits that were filed on behalf of the estate of the deceased and on behalf of the estate of the minor were rightfully and properly filed in the law division of the circuit court of Brooklyn? The answer to that, I believe, is yes. All right. So how do we get to void when the court has proper subject matter, personal jurisdiction? If the court enters an order that violates a statute, that is an erroneous order, but the court has the jurisdiction in regards to all the parties, all the attorneys, all the representatives, all the guardians of the court. So when the court perhaps, as you say, appointed a special administrator, the court did not lose the jurisdiction that it had. The court may have entered an erroneous order and maybe the order was voidable, but in order for us to get to where you want to go, we do have to conclude that the order was void, I believe. Well, I think part of the issue is that what happened after the order, I think those things do become void because Mr. Cushing then stopped getting notice of many of these things. So without notice, the court doesn't have jurisdiction over him. If he's not given notice of the proceedings that happened, such as the settlement conferences and these kinds of things, but I would say also the court that even- I don't think that that's transformed. I don't think we lose, you know, that more recently the Supreme Court has talked about the difference between an order that's voidable and one that is void, and normally the court is not ousted of jurisdiction because it enters an erroneous order or the party isn't notified of a particular proceeding somewhere down the road. I would say, Justice McBride, that even if you deem this to be a voidable order versus a void order, the result ought to be the same. Otherwise, we can simply have the courts and guardians ignore the statute, fire people at will, Well, one of the things I question is, wasn't Mr. Govins and the attorneys that were representing Mr. Govins, weren't there efforts being made to try to settle this suit mostly vis-a-vis the minor? Isn't that what their actions involved, really? They were trying to settle and get this case resolved because Judge McCallum had appointed someone to represent the interests of the minor, which we know, or at least suggested by this record, represents 95% of the state. That's correct. They were apparently trying to settle the case. Okay. So all this work and effort wasn't really, I don't know if it was taking away from the, you know, the work of the probate state as much as it was being devoted to representing the interests of the minor. That's true. But the problem with that, as I see it, is who's doing that and on whose behalf? Because the fact that ultimately the allocation of this settlement was 95% to the minor and 95% to the surviving spouse, the surviving spouse still had interests, and how were they being represented? Who was representing them? The record indicates, and I think it was at the... So that order itself is something that you think is subject to question. How did that come about, the order that determined that the minor had a 95% interest in the estate where the deceased husband only had 5%? Mr. Govins, as the court appointed GAO, made a recommendation to the trial court, and I believe the trial court, however it arrived at that, ended up with the same percentage allocation that Mr. Govins recommended. And was Mr. Cushing absent from that proceeding?  There was a hearing. I don't know that anybody questioned the allocation on that, and then the judge issued his order. Again, my position with respect to Mr. Cushing's ability to participate is, I think it's a very different situation to say, happy to hear you, but you don't mean anything to us, so we're just going to entertain you. Well, he didn't say you didn't mean anything to us. In fact, the comments that have been quoted several times in the briefs were really anything but dismissive. Now, you may believe that they were disingenuous, but they were inviting and not dismissive, and there was no statement made, and I can pull the quote if you want, but I'm sure you've read it a number of times. It was inviting responses and saying, I'm interested in what everybody has to say about this. That's right. I don't disagree with that. But again, I think there's a difference between saying, I'm happy to hear what people have to say, and somebody having the right as a party to stand in front of the court and say something. That gets back to what I asked you about earlier, which is, raise an objection. You can only say, Your Honor, I appreciate the chance to respond, but by your previous orders, I've been denied access to the information that would make my response meaningful or informed, and there was no such statement that I've seen. The statement I believe, or the closest statement that I can recall, is when I advised the court and the court admitted not allowed to participate in any of this, and the judge said that was Judge Locallo's ruling and I acceded to it. So that's the way it goes. But I'd also point out that point. Why isn't that the order that would have essentially cut off Mr. Cushing's status or ability to do it? Why wasn't it back then when Judge Cadet referred to the earlier order of Judge Locallo? Because at the time that Judge Cadet appointed M.D. Bank as special administrator for the estate, I think that was a different date and a different event than the appointment of M.D. Bank as guardian and those roles. Justice, I have to correct something I said earlier because I made a mistake. I think there really was a problem here with jurisdiction because in the appointment of the special administrator, there were real notice problems. For one thing, the... You mean the initial orders that Judge Locallo answered? No, because Judge Locallo didn't appoint a special administrator. Okay, it was Judge Cadet. It was Judge Cadet. When he appointed it, an order came out. There was no notice. There was no hearing, to our knowledge at any rate, and so there was just an ordering. It was done. And what was the point of the special administrator? To accept funds? Should there be a settlement? It's a very good question. How does the special administrator interfere with the act or the ability of Mr. Cushing to act as administrator? What usurpation in any meaningful way of the authority of Cushing was affected by the appointment of M.D. Financial? The answer to that question, I think, is this. To come back to Mr. Cushing's role, it was his role under the Wrongful Death Act to prosecute that action. Now, let's assume that appointing a GAL took care of the minor. Let's assume, although I have some issues with the extent of the authority of a GAL under those circumstances, but let's assume, at least as to the minor's interest, that's covered. Who is left to represent the interest of the surviving spouse in the estate in the Wrongful Death Act? By statute, which is what we're supposed to be following, that's Mr. Cushing. If you're going to toss Mr. Cushing out, what are you going to put in? Well, that's what they're doing. They put in M.D. Bank as special administrator, and so M.D. Bank as special administrator had to have that role. There was nobody else that could. So Mr. Klein couldn't represent himself because he was an heir, and under the Wrongful Death Act, they don't have that standing. Mr. Govins couldn't. Mr. Govins was not appointed for that purpose. Mr. Govins was appointed expressly to represent the interest of the minor. So who was left? The only one left was either Mr. Cushing, who statutorily has that role, or M.D. Bank as special administrator. So why didn't he raise an objection based upon that very argument at the time he was asked to comment on the propriety of the settlement? That argument was actually already presented here on appeal at that point. So it was, you know, should he have done that? I don't think that constitutes waiver is what I would say. Let me just ask another ancillary question before we move on. Assuming without deciding that Mr. Novoselsky had the standing to file this motion that he filed to dismiss the appeal here, he argues in that motion that with Mr. Cushing's consent, the case was resurrected in Colorado, which is a whole other can of worms on this incredible history of these cases, and dismissed as a result of the handling of the case in Colorado by Mr. Klein and Mr. Zadakis. And there is an argument that he presents that the dismissal of that suit in Colorado by the federal court would collaterally bar any further proceedings in Illinois should you get the relief that you were seeking here that would undo the settlement that has already been agreed to. Would you comment on that, please? There are a couple of things I'd say about that. One is that, first of all, Mr. Cushing had no role in that case. He's never had a role in that case. He is not the lawyer, nor am I the lawyer, for Mr. Klein with respect to that case. Leave that out of it. Let's talk about the legalities. I think there are two problems with that, as I see it. One is the circular argument. The case in Colorado, as I understand it, and I don't know enough about it because I only know what we've been given, which is scattered stuff, is that was dismissed because the case was dismissed here with the settlement. So I don't think you can then turn it into a constant circle of who gets dismissed and who doesn't get dismissed based on what gets settled where, and then if that gets overturned, the next one has priority until that gets overturned and so forth. I don't think that's a serious issue. I also don't think under Rule 60 that this would be an overturnable, I don't think it would be raised judicata here in any event, if whatever happens in Colorado, at least as to the minor, because the minor's interests were not at issue, and the Colorado judge, as I understand it, made it very clear her interests were not represented there and she was not part of that proceeding. I don't want to get into this point, the whole issue of how there could be two wrongful death actions, one here and one in Colorado, or the wisdom of the order that apparently approved that by another panel of this court. But anybody have any other questions? Yes, I do. Is this case, is the wrongful death action essentially resolved then? Yes. I understand that there may be some sanctions issue with respect to Mr. Klein, still pending, but with respect to the parties, my understanding is that it is completed. I guess the last sort of area I want to discuss with you is the reasoning behind Judge Locallo's original orders seems to be, you know, bottoms on this other section of the probate act, 5113. And your argument is that the wrongful death act has been violated, but what about the probate act that allows the courts, I mean all the orders that were initially entered, you're not really contesting, that related to the discharge of the attorneys. You know, when Mr. Govins was appointed and other attorneys were appointed to represent the minor's interests. You don't have a quarrel with any of that. We have a quarrel with the appointment of the replacement. The special administrator. In this appeal. Correct. In this appeal. The basis behind everything the trial court did that eventually ended up with a special administrator being appointed was that these were the reasons he gave. I don't want a special administrator here who may or could or has been accused of, and I have nothing to go on one way or the other, of having a conflict. The idea here is to have a clean case so we can proceed to trial. My goal here is to put this case to a jury, to have the right parties and captions in place, to give the estate the best chance and opportunity to give a balanced prosecution of the case. So at the time that these initial orders were entered, and Mr. Cushing was temporarily removed, but then put back into place, it seems to be that the court's interest was to protect more than anything else the interests of the minor. And it seems that the parties that then began working on the lawsuit were protecting the interests of the minor. I'm not seeing where Mr. Cushing's position as the administrator of the estate was how he was removed or effectively terminated or what have you when there was all this effort going on to try to settle the case, but effectively those actions were being directed to the protection of the minor. I don't think that, and I agree completely with the court's prior statements and the general notion that the interests of the minor have to be protected. I don't think there can be any question about that. I would submit that it doesn't mean that every other procedure and every other rule of law gets trumped just to reach that purpose, especially when, as in this case, there was no evidence and there was no indication and no finding and no ruling that Mr. Cushing had not adequately done his job representing the estate. Regardless, again, as I say, of what you think of Mr. Klein as an heir, he had an interest regardless of it. And that was never protected because MB, as the record indicated, I think at the allocation hearing, what did MB do? Nothing. We didn't do anything. But as the special administrator, what did MB do? That's the problem. By the admission of Mr. Gov into the hearing, and I think the court appointed counsel, did nothing. Didn't review evidence, had no active role, so who was it? Are they allowed to have an active role as a corporate special administrator? If they're the only administrator in that position, if they're the only representative. We had Mr. Cushing and we had the MB. Right. But, well, MB only is, MB was his director, but MB as special administrator, Mr. Cushing was out. He was done. He had no right to say anything at that point, and the court told him, I don't think you have standing. Your role is when you get back to probate. That's where you get to kick in again. So there was nobody looking out for that part of the interest. And that's the problem, I think, when we simply say. But didn't the court essentially say that when it started entering these orders, that it didn't want a special administrator, and I think he was referring to Mr. Cushing, was he not? When he said, I don't want any. Yes. He was, but where is anything in the record? He didn't find that. Judge Locano didn't find that. They never said he was conflicted. There was never any finding, and he had no chance or opportunity to say, wait a minute, I want a hearing. If somebody says I'm being conflicted out here, there is a removal statute. Yes, there is. And there are procedures to follow. We put these folks in, and we make it hard to remove them, not because they're just nominal parties, but they have responsibilities and obligations. And if you're going to remove them in the probate division, it has to be filed by one of the beneficiaries. And Mr. Klein had counsel, and Christina had counsel. In fact, there were efforts to remove Mr. Cushing in probate, and they all failed. So I would say that really the question is, if the court wanted to protect Christina's interests, it had ample opportunity to do it, and it did it. It didn't need to do it and shouldn't have done it in a way that effectively eviscerated Mr. Cushing's role and left part of that estate, in essence, with no representation and nobody with legal standing to stand up and say, wait a minute, tell me more about this. Is this good? Is this bad? Why is this? How is his interest being protected here? Thank you, Mr. Golinkin. Thank you very much. If I may reserve a few minutes for rebuttal. We'll see. We have the court's permission. We have three other cases, not that they're any more or less important than yours. Absolutely appreciate that. Thank you. Mr. Esposito. Thank you. May it please the Court, I'm Paul Esposito for Greyhound. There are two words I didn't hear in the oral argument. One is ought. The other is will. And they bear on the issues in this case. As to jurisdiction that the court raised, and we raised this in our brief, I believe we also raised it in a motion filed with the court. The one is that, Justice McBride, what is very relevant, the adverse action has to be happening in connection with the administration of an estate. This is the prosecution of a wrongful death action. John Cushing, except for a couple of brief days when Judge O'Connell made a mistake and he recognized it and he corrected it, was never removed in the appointed position that he had, and that is the supervisor in the city. Well, that means that the issue before us, was he removed? If he was removed, if he was effectively terminated from his duties by the orders that were entered in the law division, then I think that that is the issue. I mean, if he was removed, then I think we have jurisdiction. And we get past the jurisdiction. And then the question becomes, Mr. Cushing represented the estate and was appointed by the probate court to prosecute this wrongful death action. Isn't that a given? Oh, it's given that under the law, the special administrator can prosecute, unless under the probate act, in protection of a minor, someone else is appointed. It's 11-14, which is what you read. But Mr. Cushing was appointed by the probate court to represent the estate of the deceased to prosecute the wrongful death case. That never changed. No, it did. And it changed by act. Well, I'm not sure I agree with you. Mr. Cushing had attorneys. There was a guardian ad litem representing the minor. And those representatives were all present in the law division when everything began. Were they not? Mr. Cushing was present since 2005. Right. And when the law division case was moving along, at some point, Judge Locallo decided to discharge the attorneys that had been selected by Mr. Cushing to represent the estate. Right. Now, why doesn't Mr. Cushing, why doesn't Mr. Lincoln have the right to appear and continue and represent that estate in the law division? Because of what act said. Act is relating to the interest of a minor. Right. Mr. Cushing's duty to represent the estate was never, ever, it never changed. But what act said in, I'm sorry, I cut you off, I'm sorry. Act doesn't allow for the trial court to necessarily change the administrator of the estate of the deceased. And it didn't. It never did. That's the question of the day. Mr. Cushing was not allowed, after the first lawyers were discharged, in his representative capacity, when he was prosecuting the action on behalf of the estate of the deceased, and when he was in the law division and Judge Locallo decided to sua sponte, discharge the attorneys that had been hired, he did not discharge Mr. Cushing. He did very briefly, and then he realized that he couldn't do that. Right. So Mr. Cushing hired another lawyer, did he not? He did. And that lawyer was not allowed to participate in any proceedings in the law division. Isn't that what the record shows? He wasn't allowed to participate in an official capacity. He was always allowed to be there, and he was allowed to talk. All right. So wasn't Mr. Cushing then effectively removed because his lawyer was never allowed to officially participate as the attorney representing the estate of the deceased? No. And here's why. And this goes back a way. When Judge Locallo got involved in this case, and he realized that there were conflicts. I mean, if you recall, Judge Wick had been removed from this case, too. I don't know what that has to do with anything. Well, I'm reading up for you. What happened here is Judge Locallo recognized that a guardian ad litem needed to be appointed. That had Judge Wick. Guardian ad litem for the minor. Right. Since May of 2005, back when Mr. Cushing was just getting involved in this case, a guardian ad litem had been appointed. That guardian ad litem had been removed for cause by Judge Locallo, and Judge Locallo said that a new guardian ad litem needs to be appointed, and he appointed David Govens in that role. The reason why Ott is so critical here, Your Honor, is because of what Ott says. Ott says a couple of things. Ott says, number one, the appointment of a guardian ad litem is implicit in the court's power to protect the best interests of the minor under Section 11-13-D. I don't have a problem with that. But then it goes on to make this other point, and I think this is the critical point here. We believe the appointment of a guardian ad litem vests that individual with exclusive authority to proceed on behalf of the minor in the pending lawsuit and operates to derogate and relieve any other person's authority to do so. So what was happening here is the person- On behalf of the minor. On behalf of the minor. But this was involving the lawsuit of the estate of the deceased, which includes as a beneficiary the minor. Right. And just so you understand, Your Honor, Mr. Klein had an attorney throughout the proceeding. In fact, Judge Pahetta- I'm not aware of that attorney. Roy Olson was the person involved. I'm not talking about Mr. Zdeikas. I'm talking about another attorney. During this whole proceeding, Roy Olson is someone that Mr. Klein hired. As the administrator of the estate, is it Mr. Cushing was still the administrator of the estate, which includes the interest of the husband of the deceased and the minor child, then wasn't Mr. Cushing, in fact, relieved, removed, and essentially cut out of the prosecution of the action in the lawsuit? If he was cut out, it was cut out by Otten, not by the appointment of MV. MV was a- MV now cuts him out. He was effectively cut out of the prosecution. He didn't negotiate his lawsuit. You can look at it that way. I think Will is very instructive on this point. If you go towards the end of the Will case, Your Honor, Will talked about the fact that there's a guardian in the case making decisions in the court ruling in the best interest of the minor doesn't remove the probate-appointed person from that person's role. His role is really the probate. Can you talk a little bit about the wrongful death act? Sure. The wrongful death act seems to suggest that there are four condition zones under which the court can appoint a representative, and it appears that three of them are absent in this case. The prosecution began with an estate that was open. However it was open, it was open, and it was open to prosecute the lawsuit. Once in the law division, there was already- The wrongful death act allows for the appointment of another administrator when there wasn't an estate. So where is this story coming from to do what was done? As Judge Haddad said, I have power under the probate act to do this, and that's 11-13D. So Judge Haddad in the law division is taking on the role of the probate division now? No. Or you're referring to the section 113? I'm referring to 11-13D. So you're saying everything in the probate act trumps the wrongful death act, or are we supposed to look at these all together? I'm saying that you look at deaths in peri material. And what do you do with the wrongful death act when you already have an estate open, an administrator in place, and Mr. Cushing is never removed? Shouldn't he have been removed in order to do all these other things that the law division was doing? No, there's no need to remove him, because as Judge Haddad recognized, eventually the money is supposed to go back, or at least a portion of the money was supposed to go back for probating, and that's where Mr. Cushing was the supervisor-administrator for the probate effect. That's where Will recognizes, too. But wasn't Mr. Cushing's role to prosecute the lawsuit by hiring attorneys and proceeding to represent the estate of the deceased? Well, that's where Will comes in. That's where Austin, and I suppose Will, too, comes in. What do Poole and Cubian mean? Poole really wasn't at all applicable. I can't give you the facts right now. I talked about it in the brief. Once a probate estate has been opened, a special administrator may not be appointed. That's what it was about. That's what it's sort of about here. And it wasn't about a minor. See, that's the thing that works here. You distinguished both of these. We did, Your Honor. Because they don't involve minors. Because they don't involve minors. And, in fact, Cubian even mentioned it could be different when a minor is involved. And that's what the judge was recognizing throughout the whole case. There's a minor involved here. And, as we know, this is a minor with a huge interest in this lawsuit. In the Will and our cases, there were already settlements on the table before the actual case. Is that significant in this case? No, it's not. Because a trial court has the duty at all stages to protect the interests of a minor. It doesn't just happen at settlement time, although it certainly does happen at settlement time. That's not the only time. And as the plaintiff in the case recognized here, the plaintiff's former attorneys, as a matter of fact, Clancy and Stevens, back in 2005, moved Judge Swift with the appointment of a guardian ad litem. There's been a guardian ad litem in this case since 2005. That was long before the settlement, especially five years before the settlement was effectuated. So, you know, the court – this minor is the ward of the trial court. But why would Ott provide authority to appoint a special administrator? Ott was about appointing a guardian ad litem to be in place of the father to decide whether the settlement was in the best interest of the minor. I mean, I know you keep arguing, Ott, but I'm trying to figure out why it applies here. I think Ott applies here in connection – I think what Ott's recognition was, citing to the probate act, but also citing to the court's powers in dealing with the best interests of a minor, the court recognized that it could not allow this case to go to the jury with the problems that it was showing. Judge Fadad made very clear he was not going to resolve conflicts that – and he was not going to resolve claims that you did have a conflict or you didn't have a conflict. What Judge Fadad saw was he saw a case that was eight years old that had to get to trial, that he was refusing to continue because it had to get to trial. And he said, it's going to be distractions all the way if we are fighting, whether during the pretrial period or the trial, about conflicts and about who represents who. I mean, that was one of the first questions I would have judged. Well, why couldn't this have been transferred to the probate division to quickly resolve whether or not Mr. Cushing should remain as the administrator? Apparently he was never removed, he was never taken out of that role, and yet in the law division he was essentially removed from that role because his lawyer was told on numerous occasions that he could not officially participate. I don't know if that thought ever crossed Judge Fadad's mind. And you're saying why couldn't it have? I'm not sure whether it could or couldn't have. All I'm sure of is that under the Probate Act, the trial judge – and I think the law – the trial judge is in charge of the proceedings in his own courtroom. Even though the Probate Act allows for the appointment of a special administrator, it doesn't allow the appointment of a special administrator when the Wrongful Death Act says the court may appoint a special administrator when there hasn't already been an estate opened with an administrator in place. Isn't the essential question here whether the effect of these orders was just to slap a different label on another person? It's always happened. Isn't that what it's about? It's always happened. Well, but the point is whether slapping that label on MD Financial effectively did or did not take away the authority, and as Justice McBride was suggesting in her question, and it's all hindsight so I'm not sure how helpful it is for us to consider this, but had this been referred back to the probate division and saying, these are the problems that we see with the current occupant, and I guess from what Mr. Glinken said, that happened at some point. We think there should be a different special administrator. Then you'd have somebody that would, assuming he was removed, would satisfy whatever concerns the law division had about the propriety of the current occupant of that office. But the question is whether the procedure followed here really took all of the power and authority and duty of Mr. Cushing, placed it with someone else with the nominal cover of we haven't removed him. Okay. Let me see if I can address several parts of the question there. Number one, the probate division was in no more better position to rule on all these problems than was the trial judge. But they were the entity that appointed him in the first place. Yes, yes. But to go into another courtroom, in the other courtroom, the probate division does not have control over Judge Haddad. No more than Judge Haddad has control over the probate division. That's why Judge O'Connor reversed himself. He said, well, I didn't realize that this is a probate appointment. I can't tell the probate court what to do. The probate court can't tell the law division what to do. So you have this appointment. But presumably, if somebody did something that would result in the propriety of his removal or the necessity of his removal, those same arguments could be presented to the entity that appointed him and under whose authority he was appointed. I suppose so. And if John Cushing was being removed as the supervisor administrator of the appropriate estate, that would be a good argument. By his own admission, Your Honor, he was a nominal plaintiff in this case. By his own admission. That's all it was. He was what you said, a name slapped on a label. Well, the point that Mr. Golinkin raises is that through all of this, if you have M.B. Financial being just nominal, who is representing the interests of the estate as an entity? Because there's more than one beneficiary to the estate. There's two. And who is representing the interests of the beneficiary? One was the guardian of the land, John Cummins, and the attorneys that were appointed by Judge Cushing were not in an official representative capacity. He wasn't being allowed to participate, even though he was still appointed by the Court of Appeals to represent the state of Mississippi and the law division, although it temporarily vacated his position, it reinstated him. So the question is, who was representing the estate of the deceased in these proceedings? The estate of the deceased was really the wrongful death action. The entire estate was the wrongful death action. Who was representing the estate of the deceased in the wrongful death action that was pending in the law division? Does the circuit court have the power to basically say, even though it didn't say it, it didn't remove Mr. Cushing, it was essentially saying that from now on we're only going to hear from the guardian of the land and we're only going to hear from the attorneys for the minor. We're no longer interested in what the interest of the estate is in all of these proceedings. You know, I think the trial judge, and he didn't say it, was probably dealing with this issue just like a wrongful death action jury instruction would deal with it. There's an administrator here, but the real interests here are in the beneficiaries. And the court made sure... He was representing the other beneficiary. Roy Olson. Pardon me? Roy Olson, who was the attorney appointed to recline the 5% beneficiary, and he was not allowed to withdraw. He was there to the end, representing Roy Olson, speaking for Tiberiu Klein. He was raising objections. He was the other real attorney in interest here. Was he appointed by the probated state to represent the estate of the deceased? I'm not sure if he was appointed or if Mr. Klein just hired him and he was the attorney. He tried to withdraw. Any other questions? All right. Thank you very much, Mr. Esposito. And with your permission, Mr. Golinkin, we'll take the matter under advisement, issue a decision in due course. I would like to say for the benefit of everybody who is here involved in this case, the motion practice and briefing in this case, especially on part of one and maybe two parties, not to this case but writ large, is coming perilously close to an abuse of the process. And I want to caution that while we're always happy to receive motions that are essential in the minds of the lawyers to the prosecution of this appeal, there have been many that failed under the broadest possible interpretation of that standard. And I would caution the parties, before you affix your names to any other motions, to seriously look at the parameters of appropriate advocacy. Because if this continues, we may be called upon to make decisions that as justices we are not anxious to do. Thank you very much. We'll take a brief recess.